UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| **CHAMBERS OF**<br>**CHELSEA J. CRAWFORD**<br>**UNITED STATES MAGISTRATE JUDGE** | **101 WEST LOMBARD STREET**<br>**BALTIMORE, MARYLAND 21201**<br>MDD_CJCChambers@mdd.uscourts.gov<br>**(410) 962-4560** |

December 19, 2025

**MEMORANDUM TO PARTIES RE:**   *Charles Campbell v. John Mbah, et al.*, Civil Action No. SAG-23-0478

Dear Counsel:

    Pending before the Court is a Motion to Quash Subpoena and Motion for Protective Order, filed by Defendants Kevin Thompson, Mathew Van Winkle, M.D., John Mbah, and Temitope Folowosele. ECF No. 106. Plaintiff Charles Campbell filed a response in opposition. ECF No. 108. Defendants did not file a reply. The motion is ripe and no hearing is necessary. Loc. R. 105.6. For the reasons set forth below, Defendants' Motion is DENIED IN PART.

**RELEVANT FACTUAL BACKGROUND**

    Plaintiff Campbell alleges that, on October 7, 2022, he was a patient at the Clifton T. Perkins Hospital Center ("Perkins"), a mental health facility in Maryland. On that day, he disagreed with a decision of Defendant Van Winkle that required all patients in Plaintiff's unit to return to their rooms for "safety time." ECF No. 60 at 3 ¶¶ 2–3. Plaintiff refused to enter his room and explained to Defendant Van Winkle his disagreement with the decision. *Id.* ¶ 3. When Plaintiff continued to refuse the order to return to his room, Plaintiff alleges that Defendant Mbah responded and ordered security officers to physically push Plaintiff into his room. *Id.* at 4 ¶ 6. Plaintiff alleges that the officers and Defendants Mbah and Thompson began to violently grab Plaintiff to move him to the restraint room, causing Plaintiff injury and pain. *Id.* at 4–6 ¶¶ 7–12. While in the restraint room, Plaintiff alleges that Defendant Thompson elbowed him in the face and struck him twice in the throat. *Id.* at 6 ¶ 12. Plaintiff alleges that he was placed in restraints that were fastened too tight, causing additional injuries. *Id.* ¶ 13.

    Plaintiff alleges that he asked Defendant Folowosele for help, and rather than provide him assistance, Defendant Folowosele mocked Plaintiff and refused to call for medical care. *Id.* at 7 ¶ 16. After spending two and a half hours in restraints, Plaintiff alleges that Defendant Van Winkle entered the restraint room, listened to Plaintiff recount the incident and his injuries, and issued a written and verbal order for Plaintiff to visit the hospital clinic. *Id.* at 7–8 ¶¶ 17–18. Plaintiff alleges that he was not seen in the clinic for his injuries until October 12. *Id.* at 8 ¶ 18. Plaintiff alleges that Defendant Mbah further retaliated against Plaintiff through intimidation and other acts after Plaintiff completed a grievance form that described Plaintiff's mistreatment during the incident. *Id.* ¶ 19.

Plaintiff's Second Amended Complaint raises four counts: (1) a § 1983 claim alleging excessive force in violation of the Fourteenth Amendment, (2) a § 1983 claim alleging retaliation in violation of the First Amendment, (3) battery, and (4) assault. *Id.* at 9–10.

Plaintiff served a subpoena dated September 30, 2025, directed to the Custodian of Records at Perkins. ECF No. 108-10. The subpoena seeks for the time period of January 1, 2024 to the present, "the final audit report [the 'Report'] conducted by the National Association of State Mental Health Program Directors regarding Perkins" and "any preliminary audit report(s) conducted by the National Association of State Mental Health Program Directors regarding Perkins." ECF No. 108-10.

Defendants' Motion to Quash Subpoena and Motion for Protective Order (the "Motion") followed thereafter. ECF No. 106.

## LEGAL ANALYSIS

**I.   Defendants Lack Standing to Quash the Subpoena Under Rule 45 of the Federal Rules of Civil Procedure.**

Rule 45 of the Federal Rules of Civil Procedure governs subpoenas. It provides that, upon a timely motion, the district court where compliance with the subpoena is required "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). The movant seeking to quash a subpoena must have standing to do so. The "general rule [is] that a party lacks standing to challenge a subpoena issued to a third-party except when the party has some interest (personal, proprietary, privilege, or so forth) in the information sought." *Eichenwald v. Rivello*, 321 F. Supp. 3d 562, 564 (D. Md. 2018); *see also United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.").

Thus, in other cases, this Court has recognized that a plaintiff possessed standing to challenge a third-party subpoena seeking the plaintiff's materials in a separate case that were protected by attorney-client privilege and the work product doctrine. *Hall v. Balt. Police Dep't*, Civil Action No. RDB-24-1137, 2025 WL 509130, at *6 (D. Md. Feb. 13, 2025). And a plaintiff had standing to move to quash a subpoena that sought a confidential settlement agreement because the plaintiff was a party to the agreement and had a "personal right" to the information therein. *Phillips v. Ottey*, Civil Action No. DKC-14-0980, 2016 WL 6582647, at *2 n.5 (D. Md. Nov. 7, 2016). In another case, a domestic violence center and its employees had standing to challenge third-party subpoenas that sought potentially privileged communications between the employees and the third parties. *Richardson v. Sexual Assault/Spouse Abuse Rsch. Ctr., Inc.*, 270 F.R.D. 223, 224–25, 226 n.2 (D. Md. 2010). Finally, a corporate plaintiff had standing to challenge a third-party subpoena seeking proprietary documents involving its intellectual property, trade secrets, and communications and contracts with its patent agent. *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 441 n.12 (D. Md. 2012).

2

Here, Defendants argue that two privileges shield the report from disclosure—the medical review committee privilege and the executive privilege. ECF No. 106-1 at 2, 7. But Defendants do not contend that they hold either privilege. Indeed, they acknowledge that other parties not before the Court hold the privileges. With respect to the medical review committee privilege, Defendants assert that the Department of Health and the National Association of State Mental Health Program Directors meet the statutory definition of a medical review committee and thus may invoke the privilege to prevent disclosure of the Report. ECF No. 106-1 at 3–5. Defendants also expressly state that "*[t]he government* may invoke executive or deliberative process privilege" to shield the Report and that it is the *Department of Health's* deliberative process that it seeks to protect through its motion to quash the subpoena. *Id.* at 7–9 (emphasis added). Defendants are individual employees of Perkins, not the agencies or committees to which the privileges apply. Defendants do not otherwise claim any personal right in the Report and therefore lack standing to move to quash the third-party subpoena.

## II. Defendants May Challenge the Subpoena through their Motion for Protective Order.

While Defendants lack standing under Rule 45, they may nevertheless challenge the subpoena through a motion for a protective order. *Bender v. Weigand Sports GmbH*, Civil Action No. JKB-23-1511, 2025 WL 1920917, at *3 (D. Md. July 11, 2025) ("Courts in this Circuit have recognized that, under Rule 26(c), 'a party may challenge a third[-]party subpoena through a motion for a protective order.'" (quoting *Fangman v. Genuine Title, LLC*, Civil Action No. RDB-14-0081, 2016 WL 560483, at *3 (D. Md. Feb. 12, 2016))). Rule 26(c) permits a party to move for a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …." Fed. R. Civ. P. 26(c)(1). Upon a finding of good cause, the court may issue an order that, among other options, "forbid[s] the disclosure or discovery" of the materials in question or "limit[s] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D). The moving party must clear "a rather high hurdle" to establish good cause for a protective order. *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006).

The first step in the Court's substantive analysis is to determine whether the Report falls within the realm of discoverable information. *See Bender*, 2025 WL 1920917, at *3 (beginning analysis of motion for protective order by reviewing discoverability of information in question). Rule 26(b) sets out the scope of permissible discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality is guided by several considerations, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

3

### A. The Report is relevant to Plaintiff's claims and proportional to the needs of the case.

The bar for relevance is low. *See Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019). Relevant evidence for discovery purposes "encompasses any matter that bears or may bear on any issue that is or may be in the case." *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010). Evidence need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1).

With that low threshold in mind, Plaintiff has established that the Report is relevant to his claims in this case. Plaintiff alleges in his Second Amended Complaint that the Defendants used excessive force against him after he declined an order to return to his room. ECF No. 60 at 3–6 ¶¶ 3–12. Plaintiff alleges that some of the Defendants attempted to force him into his room before carrying Plaintiff to a restraint room where he was beaten, restrained, and held for more than two hours. ECF No. 60 at 3–8 ¶¶ 3–17. Plaintiff also alleges that his First Amendment rights were violated when Defendant Mbah retaliated against Plaintiff for lodging complaints relating to his mistreatment through the grievance system. ECF No. 60 at 8–9 ¶ 19. The Report concerns a review of the policies and practices at Perkins under the leadership of former CEO, Scott Moran, who oversaw Perkins at the time of the incident that is the subject of Plaintiff's lawsuit. The Report appears to have arisen from investigative reporting by the Washington Post that uncovered serious problems at Perkins, including violence within the facility, staffing complaints, and at least one previous instance of a failure to preserve surveillance footage—all topics directly related to Plaintiff's allegations in this case. ECF No. 108-9.

Moreover, discovery appears to have yielded little direct evidence of what occurred in the restraint room, as the Defendants and other third-party witnesses who were present have consistently testified that they do not recall the events of that day and there is no video footage available from the room. To the extent that the Report addresses other incidents where Perkins failed to preserve video surveillance, it may bear on the credibility of Perkins's own 30(b)(6) testimony in this case regarding the unavailability of surveillance footage.

The Report is also proportional to the needs of the case. The Report is not available to the public and Plaintiff is unable to obtain it through other sources. While reporting from the Washington Post has offered a glimpse into the issues at Perkins that led to the audit which, in turn, led to the Report, the investigative reporting is no substitute for the Report itself. Defendants do not claim that the Report is disproportionate to the needs of the case. Rather, they rest the entirety of their argument against disclosure on privilege and relevancy grounds. For the reasons stated above, the Report is relevant. And as explained below, Defendants have not established that the entirety of the Report is privileged and not discoverable.

**B.      The privileges asserted by Defendants do not completely shield the Report from disclosure.**

**1.      The Court declines to recognize the medical review committee privilege here.**

The medical review committee privilege arises under Maryland law and provides that "the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action." Md. Code. Ann., Health Occ. § 1-401(d)(1). The parties agree that this Court is not constrained by such a state law privilege in a federal-question case.[1] *See* ECF No. 106-1 at 5; ECF No. 108 at 18. Rather, Rule 501 of the Federal Rules of Evidence governs the application of privileges in federal courts.

Rule 501 provides that federal common law "governs a claim of privilege" unless the United States Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 501. Thus, the Court looks to federal common law to determine whether the medical review committee privilege affords the Report any protection.

When determining whether to recognize a new privilege, the court "should not 'create and apply an evidentiary privilege unless it promotes sufficiently important interests to outweigh the need for probative evidence.'" *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 (4th Cir. 2001) (quoting *Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990)). "Evidentiary privileges 'are not lightly created.'" *Id.* (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

Defendants urge this Court to apply the medical review committee privilege here because disclosure of the Report would undermine the Department of Health's efforts to improve the delivery of mental health treatment through internal evaluations of its facilities. ECF No. 106-1 at 6. But this policy argument—that confidentiality is essential to the internal review process—is common to nearly every case seeking application of a self-critical analysis privilege. Courts in this Circuit, and elsewhere, have consistently rejected application of such a privilege and Defendants offer no reason for me to depart from that weight of authority. *See Virmani*, 259 F.3d at 293 (rejecting application of the medical review committee privilege); *Bost v. Wexford Health Sources, Inc.*, Civil Action No. ELH-15-3278, 2017 WL 3084953, at *4 (D. Md. June 19, 2017) (Copperthite, J.) (same); *Tucker v. United States*, 143 F. Supp. 2d 619 (S.D.W. Va. 2001) (same); *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (denying request to extend privilege to hospital disciplinary proceedings because it would, in effect, grant "absolute immunity from prosecution for all statements made and actions taken in the context of such proceedings"); *but see Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94, 102 (D. Md. 1995) (Blake, J.). Accordingly, I join these courts in declining to recognize and apply the medical review privilege here.

---

[1] Plaintiff has asserted two federal claims and two pendent state law claims. *See* Am. Compl., ECF No. 60. The Fourth Circuit instructs that "in a case involving both federal and state law claims, the federal law of privilege applies." *Virmani v. Novant Health, Inc.*, 259 F.3d 284, 286 n.3 (4th Cir. 2001) (citations omitted).

### 2. Defendants have not established that the deliberative process privilege precludes disclosure of the Report in its entirety.

The executive privilege, sometimes referred to as the deliberative process privilege, fails to completely shield the Report from discovery. The privilege "protects from disclosure advice, opinions and recommendations that are part of the decision-making process; the goal is to prevent injury to the quality of agency decisions." *Jones v. Murphy*, 256 F.R.D. 510, 515–16 (D. Md. 2008) (Gauvey, J.) (citation modified). The privilege "distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). Thus, the privilege will only extend to documents that are both pre-decisional and deliberative. Pre-decisional documents are "antecedent to the adoption of an agency policy." *Jones*, 256 F.R.D. at 516. Deliberative documents "reflect[] the give-and-take of the consultative process" and encompass "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *City of Virginia Beach v. U.S. Dep't of Com.*, 995 F.2d 1247, 1253 (4th Cir. 1993). The privilege "does not protect purely factual information, unless it is inextricably intertwined with deliberative material." *Stone v. Trump*, 356 F. Supp. 3d 505, 514 (D. Md. 2018), *as amended*, 402 F. Supp. 3d 153 (D. Md. 2019).

The executive privilege is not absolute and even where it applies, the court must balance "the public interest in nondisclosure with the need for the information as evidence." *Cipollone v. Liggett Grp. Inc.*, Nos. 86-1198, 86-1223, 1987 WL 36515, at *2, 812 F.2d 1400 (Table) (4th Cir. Feb. 13, 1987). In so doing, the court considers the following factors: "(1) the relevance of the evidence to the lawsuit; (2) the availability of alternative evidence on the same matters; (3) the government's role (if any) in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id.*

In urging the Court to apply the privilege, Defendants point to two cases in which parties successfully invoked the privilege to prohibit disclosure of an agency's internal report. *See* ECF No. 106-1 at 8–9 (discussing *Nagy v. Balt. Life Ins. Co.*, 49 F. Supp. 2d. 822 (D. Md. 1999) and *N.Y. Times Co. v. Dep't of Educ.*, 658 F. Supp. 3d 171 (S.D.N.Y. 2023)). These cases stand for little more than the proposition that, when determining whether to apply the deliberative process privilege, courts will scrutinize the facts in each case and have broad discretion to fashion orders that balance application of the privilege with a party's need for the evidence. Otherwise, the cases offer little guidance here. *See Est. of LeRoux v. Montgomery Cnty.*, Civil Action No. AAQ-22-00856, 2024 WL 1703939, at *3 (D. Md. Apr. 19, 2024) (stating that "[t]here is no binding legal authority on the application of [the] deliberative process privilege in the Fourth Circuit" and "prior cases are of limited help because the deliberative process privilege is so fact-specific" (citation modified)).

Defendants contend that the Report is both predecisional and deliberative. They have submitted the affidavit of Aliya Jones, M.D., the CEO of Perkins, who states that the Report "makes recommendations and expresses opinions on legal and policy matters" and that the information in the Report "is being used currently to improve Perkins policies." ECF No. 106-2 ¶¶ 7–8. According to Dr. Jones, "Perkins has not finalized a policy based on the information

contained in the Report." *Id.* ¶ 9. I cannot glean from Dr. Jones's affidavit the degree of factual information contained in the Report and whether the facts are closely linked to the Report's recommendations, opinions, or advice.

Assuming, however, that the privilege applies at least in part to the Report, I must balance nondisclosure of the Report against Plaintiff's need for the evidence. *See Cipollone*, 1987 WL 36515, at *2. The factors are in equipoise. As explained above, the Report is relevant to Plaintiff's claims and he cannot obtain it from any other source, making the evidence an important part of his case. However, I accept Defendants' proffer that the Report expresses opinions on legal and policy matters that Perkins is evaluating to improve the delivery of health care at its facility. ECF No. 106-2. The articles submitted by Plaintiff certainly corroborate the fact that the Report is part of a larger effort to reform the policies and practices at Perkins. *See* ECF No. 108-9. As such, the Report is likely to include the kind of frank advice, opinions and recommendations regarding future policy changes that the deliberate process privilege was designed to protect. It follows that the Report is also likely to contain substantial facts that fall outside the privilege.

### III.     Defendants Shall Submit the Final Report for the Court's *In Camera* Review.

I cannot rest any decision on speculation. In order to determine whether there is non-privileged and severable information in the Report that Defendants must disclose, Defendants shall provide the final Report to the undersigned for *in camera* review. Defendants shall provide two copies of the Report no later than December 30. One copy shall contain proposed redactions of information Defendants believe fall within the scope of the deliberative process privilege. The second shall be an unredacted copy from which I can assess the appropriateness of the proposed redactions. Following my review, I will determine whether, and to what extent, Defendants must disclose the Report.

Despite the informal nature of this memorandum, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.

                              Sincerely,

                              */s/*

                              Chelsea J. Crawford
                              United States Magistrate Judge